UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


VONABELL HURST,

      Plaintiff,

v.                                Case No. 8:20-cv-847-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

      Defendant.
_____/


**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claim for Supplemental Security Income (SSI).   For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1994, has an associate's degree, and has no past relevant work experience.  (R. 24, 184, 213).  In July 2015, the Plaintiff applied for SSI, alleging disability as of December 2014 due to depression, seizures, obsessive compulsive disorder, intermittent explosive disorder, post-traumatic stress disorder,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the Defendant in this suit.

and "mental illness." (R. 213, 404). The Social Security Administration denied the Plaintiff's applications both initially and on reconsideration (R. 226, 241), as did an Administrative Law Judge (ALJ) following a hearing on the matter in July 2017 (R. 244–66). The Appeals Council later vacated the ALJ's decision, however, and remanded the case, with the instruction that the ALJ consider whether there was good cause to admit additional evidence offered by the Plaintiff after the hearing. (R. 267–69).

In a decision filed in June 2019, the ALJ addressed the additional evidence issue but found that the good cause standard had not been met. (R. 12–13). Having disposed of that question, the ALJ then went on to resolve the merits of the Plaintiff's SSI application. (R. 13–26). In doing so, the ALJ found that the Plaintiff: (1) had not engaged in any substantial gainful activity since her application date; (2) had the severe impairments of conversion disorder, obsessive-compulsive disorder with post-traumatic stress disorder, a subjective history of psychogenic seizures/syncope; and major depression with generalized anxiety disorder in a histrionic personality and mood disorder; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform work at all exertional levels with some non-exertional limitations, including a restriction that she not have more than frequent interaction with the general public, co-workers, or

2

supervisors; and (5) based on the testimony of a vocational expert (VE),[2] could engage in jobs that exist in significant numbers in the national economy.  *Id*.  In light of these findings, the ALJ concluded that the Plaintiff was not disabled.  (R. 26).

The Appeals Council denied the Plaintiff's request for review.   (R. 1–3). Accordingly, the ALJ's decision became the final decision of the Commissioner.

## II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a).[3] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process."  *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[4]  Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe

---

[2] "A [VE] is an expert on the kinds of jobs an individual can perform based on [the claimant's] capacity and impairments."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).

[3] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 416.920(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable

4

person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted).   In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).   "[W]hile the court [accords] deference to the [Commissioner's] factual findings, no such deference is given to [his] legal conclusions."   *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

III.

The Plaintiff raises two challenges on appeal: (1) the ALJ erred in assigning only "some weight" to the opinion of a one-time psychological consultative examiner, Dr. Steven Kanakis; and (2) the ALJ's RFC determination did not account for the symptoms associated with the Plaintiff's bipolar disorder, which was diagnosed by a licensed clinical social worker (LCSW), Kathleen Rodriguez.   The Commissioner counters that the ALJ properly applied the governing law and that his decision is supported by substantial evidence.   Upon a thorough review of the record and the parties' submissions, the Court finds that the Plaintiff's challenges lack merit.

A.

As noted above, at step four of the sequential evaluation process, the ALJ must determine the claimant's RFC and her ability to perform her past relevant work.   *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545.   To do so, an ALJ "must consider all

5

medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)).  Medical opinions are statements from physicians or other acceptable medical sources "'that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [her] impairment(s), and [the claimant's] physical or mental restrictions.'"  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (quoting 20 C.F.R. § 404.1527(a)(2)).

The Regulations set forth three tiers of medical opinions: (1) treating doctors; (2) non-treating, examining doctors; and (3) non-treating, non-examining doctors. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (citing 20 C.F.R. §§ 404.1527(a)(2), (c)(1)–(2); *id.* at § 416.927(c)(1)-(2)).  Treating doctors' opinions are accorded the most deference because there is a greater likelihood that these providers will "be able to give a more complete picture of the [claimant's] health history."  *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (per curiam) (citing 20 C.F.R. § 404.1527(c)(2)).  The opinion of a one-time examining doctor, by contrast, "[i]s not entitled to great weight."  *Crawford*, 363 F.3d at 1160 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).  And, the opinion of a non-examining doctor is generally afforded the least deference.  *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (per curiam).

Irrespective of the nature of a doctor's relationship with a claimant, an ALJ must state with particularity the weight given to a medical opinion and the reasons

6

therefor. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). In rendering this assessment, an ALJ must take into account: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of the doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) the degree to which the doctor's opinion is consistent with the record as a whole; and (5) the doctor's area of specialization. 20 C.F.R. § 416.927(c). While an ALJ is required to consider each of these factors, he is not obligated to address them explicitly in his decision. *Lawton*, 431 F. App'x at 833. In the end, an ALJ is free to reject the opinion of any doctor where the evidence supports a contrary conclusion. *Id.* (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)); *accord Sharfarz*, 825 F.2d at 280 ("Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding.") (citation omitted).

In this case, Dr. Kanakis conducted a psychological evaluation of the Plaintiff in November 2015. (R. 661). During the course of that evaluation, the Plaintiff advised that "she spen[t] her typical day [ ] 'horseback riding, watching television, and collecting signatures on petitions for extra money,'" and that she also could cook, drive, and manage her own finances. (R. 662). Based upon the information provided by the Plaintiff and a review of her therapist's records, Dr. Kanakis determined that the Plaintiff's thought processes "were logical and coherent" and that she appeared to be of average intelligence, with "fair to poor" insight and judgment, and with no evidence of a thought disorder. (R. 661–63). Dr. Kanakis further found that, although

the Plaintiff reported a "plethora of physical ailments," there was no medical evidence demonstrating the existence of those afflictions.  (R. 663).  Considering the above, Dr. Kanakis opined:

> [t]he results of the present evaluation suggest that the [Plaintiff] suffers from Conversion Disorder with Mixed Symptoms, Persistent; Generalized Anxiety Disorder; and Histrionic Personality Disorder.  She appeared to be in need of intensive outpatient counseling at the time of the evaluation.  She reported that she currently sees a counselor one time per month, but this counseling should be occurring at least weekly.  Her prognosis is poor due to the nature [of her] personality disorders.  She was believed to be at risk of suffering decompensation in a work-like setting in that she is likely to experience rather dramatic physical problems when stressors become too great.  She, more than likely, has little difficulty collecting signatures on petitions for extra money in that she is able to perform this work at her own pace and without the stress of a supervisor.  The [Plaintiff] was believed able to manage her own finances as demonstrated by her ability to do simple arithmetic problems and by her report of managing her own finances currently.

(R. 663).

In his decision, the ALJ afforded only some deference to Dr. Kanakis's conclusions, observing that "there was little evidence to suggest that the [Plaintiff] would not be able to perform unskilled work with some limitation in interpersonal contact."  (R. 23).  In support of this finding, the ALJ pointed to the fact that the Plaintiff was able to attend classes and "to work collecting signatures on petitions." *Id.*

The Plaintiff now argues that the ALJ's assessment of Dr. Kanakis's opinion is not sufficiently buttressed by the evidence of record.  Implicit in the Plaintiff's

argument—although not directly stated—is that the ALJ should have accorded greater weight to Dr. Kanakis's evaluation of the Plaintiff's limitations.  This contention fails.

It bears emphasizing at the outset that the ALJ was not required to give Dr. Kanakis's assessments any special deference given that he was a one-time consultative examiner.  *See McSwain*, 814 F.2d at 619; *Crawford*, 363 F.3d at 1160.  It should also be noted that, as he was obligated to do, the ALJ made clear the extent to which he credited Dr. Kanakis's opinion and his reasons for doing so.  (R. 23).

Putting aside these issues, the Plaintiff does not argue, let alone demonstrate, that the ALJ would have arrived at a different RFC determination had he attached more significance to Dr. Kanakis's findings than he did.  The Plaintiff also does not explain what weight the ALJ should have assigned to Dr. Kanakis's assessments and why.  Instead, the Plaintiff's contention boils down to a quarrel with the ALJ's resolution of conflicting evidence as it relates to Dr. Kanakis's opinion, without any showing that such evidence would result in a contrary determination as to the Plaintiff's functional abilities.  Such an argument cannot succeed.  *See Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986) ("The weighing of the evidence is a function of the factfinder, not of the district court."); *Lawton*, 431 F. App'x at 833 ("While the record does contain some evidence that is contrary to the ALJ's determination, we are not permitted to reweigh the importance attributed to the medical evidence.").

The Court is likewise unpersuaded with the Plaintiff's assertion that there is not substantial evidence to bolster the ALJ's evaluation of Dr. Kanakis's findings.  While

the Plaintiff argues that her "signature-collection job" does not show she is capable of full-time work, at a minimum her employment buttresses the ALJ's conclusion that she can perform unskilled work with limited interpersonal contact.  (R. 23); *see also Raices v. Comm'r of Soc. Sec.*, 805 F. App'x 836, 838 (11th Cir. 2020) (holding that the claimant's part-time job supported the ALJ's determination that the claimant could engage in some work activity).  And, despite the Plaintiff's claim that the record lacks evidence of her attending classes after her alleged disability onset date in December 2014, the Plaintiff reported to her neurologist in September 2016 that, although she was not working at the time, "she ha[d] been taking classes one of which [was] a counseling class."  (R. 914).  This evidence amounts to "more than a scintilla" and is adequate to sustain the ALJ's determination.  *Biestek*, 139 S. Ct. at 1154; *see also Crawford*, 363 F.3d at 1158–59 ("Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (quotations omitted).

The Court similarly finds unconvincing the Plaintiff's attempts to add heft to Dr. Kanakis's opinion by arguing that it is consistent with the Plaintiff's history of frequent psychogenic, non-epileptic seizures.  (Doc. 15 at 14).  While the Plaintiff may well be correct that such evidence supports Dr. Kanakis's conclusions, this fact provides no basis to overturn the ALJ's assessment of Dr. Kanakis's findings because it is not the function of the Court to re-weigh the evidence upon review.  *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2018) ("Under a substantial evidence standard of review, [the plaintiff] must do more than point to evidence in the record

that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion.") (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.") (citations omitted).  Rather, the Court's role is confined to analyzing whether the ALJ relied on substantial evidence and applied the proper legal standards.  *Miles*, 84 F.3d at 1400.  The ALJ met this standard with respect to Dr. Kanakis's opinion.

### B.

The Court finds unavailing as well the Plaintiff's second challenge that the ALJ's RFC determination does not account for limitations caused by the Plaintiff's bipolar disorder, insofar as it lacks a restriction for unexcused absences or time off task. (Doc. 15 at 18).  This argument hinges on an October 2015 bipolar disorder diagnosis rendered by Ms. Rodriquez, an LCSW who served as the Plaintiff's therapist.  (R. 620–22).  In support of this diagnosis, Ms. Rodriquez described the Plaintiff's mood as "[v]acillat[ing] between euphoric to depression;" her judgment as "poor [to] fair;" her impulse control as "poor;" and her affect as "either . . . hyperfocused and overly happy to crying, angry, hopeless and suicidal."  (R. 621).  Ms. Rodriquez opined that "[t]he more expected from [the Plaintiff,] the less she is capable of functioning," and that "[i]t is unlikely [she] can work in any job/career that has expectations, time constraints or any responsibilities . . . she interprets as overwhelming or unfair to her."  (R. 622).

11

The Plaintiff's argument fails as a threshold matter because Ms. Rodriquez—as an LCSW—is not an acceptable medical source whose opinion can establish the existence of a mental affliction like bipolar disorder. *See* 20 C.F.R. § 416.902(a) (excluding LCSWs from the list of acceptable medical sources); *id.* at § 416.921 (requiring that a mental impairment be established "by objective medical evidence from an acceptable medical source").

The Plaintiff's argument also fails because, even though the ALJ did not have to, he nonetheless considered Ms. Rodriguez's evaluation in determining the Plaintiff's RFC. (R. 23). Although he did not refer specifically to a diagnosis of "bipolar disorder," the ALJ addressed Ms. Rodriquez's conclusion that the Plaintiff's "depression, mania, and instability" prevented her from working. *Id.* The ALJ ultimately disagreed with Ms. Rodriquez's assessment based on the Plaintiff's prior employment that allegedly ended due to seizures rather than mental health problems; the fact that she was able to perform the duties associated with the signature collection job; her attendance at classes; and her failure to comply with recommended treatments. *Id.* Substantial evidence supports these conclusions. *Biestek*, 139 S. Ct. at 1154.

The Plaintiff further contends that the "overall evidence shows that [she] is not able [ ] to fulfill a regular work schedule due to her alternating depressive and manic episodes," and that documentation from other professionals corroborate the depressive and manic symptoms described by Ms. Rodriquez. (Doc. 15 at 19). By way of example, the Plaintiff points to various records purportedly showing that she

12

"experienced recurrent seizure episodes when . . . exposed to psychological stress;" treatment notes from her neurologist stating that "she ha[d] not slept in several days" and "[spoke] in superlatives;" and a psychologist's description of her as being "highly distressed."   (Doc. 15 at 18–19) (citations omitted).   The Plaintiff's argument is misguided, however, because—as discussed previously—other evidence supports the ALJ's reasons for discounting Ms. Rodriquez's opinion that the Plaintiff could not maintain a regular work schedule.  *Sims*, 706 F. App'x at 604.

The Plaintiff's reliance on the Eleventh Circuit's decision in *Samuels v. Acting Commissioner of Social Security*, 959 F.3d 1042 (11th Cir. 2020) does not dictate a different conclusion.  In *Samuels*, the claimant applied for disability benefits based on her bipolar disorder.  *Id.* at 1044.  While the ALJ found that condition constituted a "severe impairment," he did not account for any unexcused absences or time spent off-task in posing a hypothetical to a VE.  *Id.* at 1047.

In this case, however, the ALJ did not find that the Plaintiff had the severe impairment of bipolar disorder because that diagnosis only came from an unacceptable medical source, Ms. Rodriguez.  Even so, as explained above, the ALJ properly supported his reasons for discounting Ms. Rodriguez's opinion in any event.  Thus, *Samuels* is of no help to the Plaintiff here.

13

IV.

For the foregoing reasons, it is hereby ORDERED:

1.      The Commissioner's decision is affirmed.

2.      The Clerk of Court is directed to enter Judgment in the Defendant's favor and to close the case.

SO ORDERED in Tampa, Florida, this 31st day of August 2021.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record

14